**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
Joseph J. Mandia, Esquire
ID#: 016652008
Erin M. Boyle, Esq.
ID#: 312672020
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856) 755-1115
Attorneys for Plaintiffs

**RHONDA RAY SCHAEFER and DAWN MARI KING as Co-Executors of the Estate of SARAHSUE NELSON, deceased**

**Plaintiffs,**

**vs.**

**AMERICAN INTERNATIONAL INDUSTRIES,** individually and as successor to Pinaud, Inc., Barbara Alice, Inc., Ed Pinaud, Inc. d/b/a Ed Pinaud, The Nestle-Le Mur Company, The Neslemur Company, The Neslemur-Company, for the Clubman line of products;

**BARRETTS MINERALS, INC.;**

**BRENNTAG NORTH AMERICA,** as a successor-in-interest to Mineral Pigment Solutions, Inc., as a successor-in interest to Whittaker, Clark & Daniels, Inc.;

**BRENNTAG SPECIALTIES, INC.,** f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.;

**PFIZER, INC.;**

**SPECIALTY MINERALS, INC.;**

**WHITTAKER CLARK & DANIELS, INC.;**

**JANSSEN PHARMACEUTICALS, INC.,** individually and as successor in interest to Johnson

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION MIDDLESEX COUNTY**

**DOCKET NO. L-001022-22 AS**

**CIVIL ACTION (ASBESTOS LITIGATION)**

**THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

# EXHIBIT B

& Johnson Consumer, Inc.;

**JOHNSON & JOHNSON;**

**JOHNSON & JOHNSON CONSUMER, INC.;**

**JOHNSON & JOHNSON HOLDCO (NA) INC.;**

**KENVUE INC.,** individually and as successor in interest to Johnson & Johnson Consumer, Inc.;

and **JOHN DOE CORPORATIONS, 1-50**

**Defendants.**

Plaintiffs, by way of Complaint against Defendants, upon information and belief allege as follows:[1]

**PARTIES-PLAINTIFFS**

1. Plaintiff Rhonda Ray Schaefer resides at 15671 Merlin Avenue, Mascotte, Fl 34753 and Plaintiff Dawn Mari King, resides at 1619 Kelly Avenue, West Liberty, IA 52776.

2. Decedent Sarahsue Nelson (also referred to as "Decedent" in this Complaint) was diagnosed with mesothelioma, an asbestos-related cancer, which resulted in death.

3. Decedent Sarahsue Nelson died on July 25, 2023, and leaves surviving heirs who sustained pecuniary loss resulting from her death.

4. From approximately 1972-2005, Decedent was regularly and frequently exposed to asbestos from her occupational use of Clubman Talc Powder as a hairdresser. During this same period, Decedent was regularly and frequently exposed to asbestos as a bystander when her co-

[1] In addition to the allegations set forth herein, Plaintiffs adopt and incorporate by reference the Standard Complaint against Defendants Kenvue Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson Holdco (NA) Inc. filed on June 20, 2023, in the Superior Court of New Jersey, Middlesex County, Trans ID: LCV20231842063.

workers used Clubman Talc Powder in her presence in their capacity as hairdressers. From approximately 1960-2000, Decedent was exposed to asbestos from her personal use of Johnson's Baby Powder, and from 1960-1968, Decedent was exposed to asbestos from her use of Johnson's Baby Powder on her children.

5. On or about December 19, 2023, Rhonda Ray Schaefer and Dawn Mari King became the appointed representatives for the Estate of Sarahsue Nelson by the Iowa District Court For Dubuque County with authorization to bring this action against the Defendants referred to in this Complaint on behalf of Decedent and Decedent's heirs and/or survivors.

6. Plaintiffs bring this action pursuant to N.J.S.A. 2A:31-1, et seq. and 2A:15-3, individually and on behalf of the Estate of Decedent and Decedent's heirs and/or survivors.

7. Decedent was caused to suffer severe, permanent and disabling personal injury, expended and was caused to expend sums of money for medical care and treatment, was prevented from pursuing normal activities and employment, experienced severe pain and suffering and mental anguish, was deprived of ordinary pursuits and enjoyments of life. Decedent's heirs and/or survivors suffered loss of advice, guidance, counsel, companionship, services, society and support.

8. Plaintiffs seek all damages provided by law including but not limited to compensatory damages, punitive damages, loss of services, economic loss, pain and suffering, and wrongful death, pre-and post-judgment interest, and costs of suit as provided by law.

9. Reference herein to "Decedent" and "Plaintiffs" are references to all the persons set forth above as is syntactically and contextually correct.

**PARTIES-DEFENDANTS**

10. Defendants are corporations organized under the laws of New Jersey and/or various states of the United States of America that were and are doing business in the State of New Jersey. The aforementioned Defendants mined, milled, designed, manufactured, sold, supplied, purchased

and/or marketed asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talc powder products, and/or asbestos fiber of various kinds and grades which Decedent was exposed.

11. Defendants AMERICAN INTERNATIONAL INDUSTRIES, individually and as successor to Pinaud, Inc., Barbara Alice, Inc., Ed Pinaud, Inc. d/b/a Ed Pinaud, The Nestle-Le Mur Company, The Neslemur Company, The Neslemur-Company, for the Clubman line of products; BARRETTS MINERALS, INC.; BRENNTAG NORTH AMERICA, as a successor-in-interest to Mineral Pigment Solutions, Inc., as a successor-in interest to Whittaker, Clark & Daniels, Inc.; BRENNTAG SPECIALTIES, INC., f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.; PFIZER, INC.; SPECIALTY MINERALS, INC.; WHITTAKER CLARK & DANIELS, INC.; JANSSEN PHARMACEUTICALS, INC., individually and as successor in interest to Johnson & Johnson Consumer, Inc.; JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC.; JOHNSON & JOHNSON HOLDCO (NA) INC.; and KENVUE INC., individually and as successor in interest to Johnson & Johnson Consumer, Inc. are corporations or other business entities organized under the laws of one or more states of the United States of America and doing business in New Jersey.

12. Defendants, JOHN DOE CORPORATIONS, 1-50, are the fictitious names or corporations, Partnerships, and/or other business entities whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct of liability of those who mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and

unfinished asbestos-containing talc powder products, and/or raw asbestos fiber of various kinds and grades to which Decedent was exposed.

13. Defendants conduct business in the State of New Jersey, and certain Defendants reside or maintain their principal offices and/or principal places of business in the State of New Jersey.

**FIRST COUNT**

14. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

15. Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

16. Defendants were engaged, directly or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing products, and/or equipment requiring or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades (hereinafter collectively referred to as "Defendants' Products").

17. Defendants, directly or indirectly, caused Defendants' Products to be sold to or used by Decedent and/or in close proximity to Decedent.

18. Decedent was exposed to and came in contact with Defendants' Products. Decedent inhaled and/or ingested the asbestos dust and fibers emanating from Defendants' Products.

19. As a direct and proximate result of Decedent's inhalation and ingestion of dust particles and fibers from Defendants' Products, Decedent developed permanent and disabling personal injuries.

20. During the time that Defendants mined, milled, designed, manufactured, produced processed, compounded, converted, sold, merchandised, distributed, and supplied Defendant's Products, Defendants knew or in the exercise of reasonable care should have known that Defendants' Products were defective, ultra-hazardous, dangerous, and otherwise highly harmful to Decedent, and others.

21. Defendants knew or in the exercise of reasonable care should have known that the use of Defendants' Products, would cause asbestos dust and fibers to be released into the air and would create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach and other bodily organs of users of Defendants' Products, and to others, like bystanders and household members, breathing that air and coming into contact with that dust.

22. Decedent, and others, did not know the nature and extent of the injury that would result from contact with and exposure to Defendants' Products, or from the inhalation or ingestion of the asbestos dust and fibers.

23. Defendants knew or in the exercise of reasonable care should have known that Decedent would come into contact with and be exposed to Defendants' Products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of Defendants' Products by Decedent, along with others.

24. Despite the facts as set forth above, Defendants negligently, grossly negligently, maliciously, with willful and wanton disregard, recklessly and intentionally:

(a) Mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce Defendant's Products which Defendants knew, or in the exercise of reasonable care should have known, were defective, dangerous, ultra-hazardous and otherwise unreasonably harmful to Decedent, and others;

(b) Failed to take reasonable precautions or exercise reasonable care to warn Decedent, along with others, including Decedent's family members, adequately of the risks, dangers and harm to which Decedent would be exposed by exposure to, contact with, use and handling of Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(c) Failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, proper equipment and appliances necessary to protect Decedent, and others, from being injured, poisoned, disabled, killed or otherwise harmed by using, handling, coming into contact with and being exposed to Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(d) Failed to package their products in a manner that would assure that Decedent, and others, would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(e) Failed to advise Decedent, and others, of the necessity to adopt and enforce a safe, sufficient and proper method and plan of using, handling, coming into contact with and being exposed to Defendants' Products so that Decedent would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(f) Ignored and/or suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders and other illnesses and diseases to individuals such as Decedent and other persons similarly situated who were exposed to Defendants' Products;

(g) Disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

(h) Failed to investigate, impose and comply with policies, procedures, standards and regulations as to exposure to asbestos, asbestos fibers, and asbestos dust;

(i) Wrongfully processed, manufactured, packaged, distributed, used, delivered, and sold Defendants' Products for use by Decedent, others like her and the general public;

(j) Exposed and continued to expose Decedent and other persons similarly situated to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

(k) Failed to seek substitute materials in lieu of the use of talc and/or asbestos;

(l) Failed to provide proper, adequate, correct and appropriate warnings, labels, advice, cautions, instructions, and information as to the use of and consequences of exposure to Defendants' Products, asbestos, asbestos fibers and dusts and failed to use reasonable care as to same;

(m) Failed to provide proper and appropriate warnings and cautions to all users of Defendants' Products, including Decedent, of the dangers of asbestos-containing products, fibers and dusts, both known and foreseeable; and

(n) Failed to advise Decedent, as well as others, who Defendants knew, or in the exercise of reasonable care, should have known, had been exposed to, inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products, to cease further uncontrolled or unprotected exposure to Defendants' Products and the inhalation or ingestion of asbestos dust and fibers; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases.

25. Defendants otherwise acted negligently, grossly negligently, maliciously, with willful and wanton disregard, recklessly and with intentional disregard for the welfare of Decedent in the mining, milling, designating, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, or otherwise placing in the stream of commerce Defendants' Products.

26. Defendants acted in a negligent, grossly negligent, malicious, willful and wanton manner, with reckless disregard for the health and welfare of Decedent and others similarly situated and failed to use reasonable care under all of the circumstances.

27. As a direct and proximate result of the acts and omissions of Defendants, Decedent was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent developed mesothelioma and subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent endured severe pain and suffering and mental anguish, was

required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and employment and was deprived of her ordinary pursuits and enjoyments of life. Decedent suffered lost wages and earnings and severe pecuniary loss, all to Decedent's and Decedent's heirs and/or survivor's loss, including loss of advice, guidance, counsel, companionship and services. Additionally, Plaintiffs incurred funeral and burial expenses caused by Decedent's death.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, wrongful death damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## SECOND COUNT

28. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

29. Defendants expressly and impliedly warranted that Defendants' Products, which they mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use and safe for their intended purposes.

30. Defendants breached said warranties in that Defendants' Products were defective, ultra-hazardous, dangerous, unfit for use, not merchantable and not safe for their intended, ordinary and foreseeable use and purposes.

31. As a direct and proximate result of Defendants' breach of warranties, Decedent was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent

developed mesothelioma and subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and employment and was deprived of her ordinary pursuits and enjoyments of life. Decedent suffered lost wages and earnings and severe pecuniary loss, all to Decedent's and Decedent's heirs and/or survivor's loss, including loss of advice, guidance, counsel, companionship and services. Additionally, Plaintiffs incurred funeral and burial expenses caused by Decedent's death.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, wrongful death damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## THIRD COUNT

32. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

33. Defendants failed to disclose and intentionally and negligently misrepresented to Decedent, and others, the health risks created by ordinary use of Defendants' Products.

34. Decedent, as well as others, relied upon said representations, and Decedent, as well as the reliance of others, was foreseeable to Defendants.

35. As a result of Defendants' conduct, Decedent was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent developed mesothelioma and

subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and employment and was deprived of her ordinary pursuits and enjoyments of life. Decedent suffered lost wages and earnings and severe pecuniary loss, all to Decedent's and Decedent's heirs and/or survivor's loss, including loss of advice, guidance, counsel, companionship and services. Additionally, Plaintiffs incurred funeral and burial expenses caused by Decedent's death.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, wrongful death damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## FOURTH COUNT

36. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

37. Defendants are strictly liable to Plaintiffs by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Decedent and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Decedent and other persons similarly situated;

(d) Throughout the many years that Decedent and other similarly situated persons were exposed to and used Defendants' Products, Defendants' Products reached the users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' asbestos-containing products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users, bystanders and household members;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, were defective because they failed to contain adequate warnings, were defectively manufactured as they failed to comply with their own specifications, were defectively designed because the risks and dangers associated with the use of Defendants' Products outweighed their benefits, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by ordinary users, consumers, workers, bystanders and household members, and also because the risks of Defendants' Products outweighed their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

38. As a consequence of the defective condition of Defendants' Products, Decedent was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent developed mesothelioma and subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and employment and was deprived of her ordinary pursuits and enjoyments of life. Decedent suffered lost wages and earnings and severe pecuniary loss, all to Decedent's and Decedent's heirs and/or survivor's loss, including loss of advice, guidance, counsel, companionship and services. Additionally, Plaintiffs incurred funeral and burial expenses caused by Decedent's death.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, wrongful death damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## FIFTH COUNT
## NEW JERSEY PRODUCTS LIABILITY ACT CLAIM (NJSA 2A:58C-1 *et seq.)*

39. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

40. Defendants are strictly liable to Plaintiffs by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Decedent and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Decedent and other persons similarly situated;

(d) Throughout the many years that Decedent and other similarly situated persons were exposed to and used Defendants' Products, Defendants' Products reached the users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' asbestos-containing products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users, bystanders and household members;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, were defective because they failed to contain adequate warnings, were defectively manufactured as they failed to comply with their own specifications, were defectively designed because Defendants' Products outweighed their benefits, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by ordinary users, consumers, workers, bystanders

and household members, and also because the risks of Defendants' Products outweighed their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

41. As a consequence of the defective condition of Defendants' Products, Decedent was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent developed mesothelioma and subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and employment and was deprived of her ordinary pursuits and enjoyments of life. Decedent suffered lost wages and earnings and severe pecuniary loss, all to Decedent's and Decedent's heirs and/or survivor's loss, including loss of advice, guidance, counsel, companionship and services. Additionally, Plaintiffs incurred funeral and burial expenses caused by Decedent's death.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, wrongful death damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## SIXTH COUNT

42. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

43. Defendants acted in concert with each other and with other members of the industry through express agreement, implicit agreement, imitative behavior and conscious parallel behavior:

(a) To withhold from users of Defendants' Products, and from persons who Defendants knew or should have known would be exposed to Defendants' Products, information regarding the health risks of breathing or ingesting asbestos dust and fibers;

(b) To eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust; and

(c) To assure that Defendants' Products became widely used in industries such as personal hygiene, beauty, infant care, and similar industries.

44. Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures and promotion of widespread use of asbestos-containing products would expose persons such as Decedent to unreasonable risk of bodily injury.

45. Defendants nevertheless gave substantial assistance and encouragement to each other and to other members of the industry and assisted each other and other members of the industry in: withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of asbestos would not subjected to risk of injury; and promoting widespread use of Defendants' Products which Defendants knew would expose Decedent to unreasonably risk of bodily injury.

46. As a direct and proximate consequence of the concerted actions of Defendants and other members of the industry, Decedent was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and

foreseeable use of Defendants' Products. Decedent developed mesothelioma and subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and employment and was deprived of her ordinary pursuits and enjoyments of life. Decedent suffered lost wages and earnings and severe pecuniary loss, all to Decedent's and Decedent's heirs and/or survivor's loss, including loss of advice, guidance, counsel, companionship and services. Additionally, Plaintiffs incurred funeral and burial expenses caused by Decedent's death.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, wrongful death damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## SEVENTH COUNT

47. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

48. The Defendants constitute all known, non-remote producers, designers, manufacturers, suppliers, distributors of the asbestos-containing products which could have caused Decedent's injuries.

49. Each of the Defendants, whether acting individually or in concert with others, violated a duty of care owed to Decedent, or otherwise engaged in culpable activity against Decedent. The acts and omissions of at least one of the Defendants caused Decedent to suffer the injuries, losses and expenses alleged in prior counts of this Complaint.

50. Plaintiffs in no respect can be blamed should Decedent be unable to establish which of the asbestos-containing products caused the injuries complained of herein.

51. The burden of proof in this matter thus should shift to Defendants to demonstrate that their respective conduct and their respective asbestos-containing products could not have caused Decedent's injuries, and failing such proof, Defendants should be held jointly, severally, or alternatively liable for Decedent's injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, wrongful death damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## EIGHTH COUNT

52. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

53. At all times relevant hereto, the Defendants, as a part of their businesses, were engaged, directly, or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos-containing products, and/or asbestos containing talc and/or other finished and unfinished asbestos-containing talc powder products, which Defendants placed into the stream of commerce in a defective, unsafe and inherently dangerous condition in that, among other things, adequate warnings, instructions and precautions were not given to known and foreseeable users and handlers, including Decedent, and the products and materials were expected to and did reach such persons, including Decedent, without substantial change in the condition in which they were sold.

54. At all times relevant hereto, the asbestos containing products and materials were used and employed for the purposes for which they were mined, processed and manufactured, designed, fashioned, packaged, inspected, tested, sold and intended to be used, and in a manner foreseeable to the Defendants.

55. The injuries and resulting damages to Decedent were caused by the defective, unsafe and dangerous condition of the asbestos products and materials which Defendants distributed, supplied, sold, and otherwise placed in the stream of commerce.

56. As a consequence of the Defendants' conduct and//or the defective condition of Defendants' Products, Decedent was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Decedent developed mesothelioma and subsequently died as a direct and proximate result of said exposure to Defendants' Products. Decedent endured severe pain and suffering and mental anguish, was required to expend great sums of money for medical care and treatment related thereto, was prevented from pursuing her normal activities and employment and was deprived of her ordinary pursuits and enjoyments of life. Decedent suffered lost wages and earnings and severe pecuniary loss, all to Decedent's and Decedent's heirs and/or survivor's loss, including loss of advice, guidance, counsel, companionship and services. Additionally, Plaintiffs incurred funeral and burial expenses caused by Decedent's death.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## **NINTH COUNT**

57. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

58. The Estate of the Decedent was liable for and, in fact, paid for hospital, medical, funeral, and burial expenses and charges for the Decedent.

59. The Decedent left survivors who, at the time of her demise and by reason of her wrongful death, have suffered pecuniary losses.

60. There is, and at the time of the illness hereinabove set forth, there was in force and effect in the State of New Jersey a Wrongful Death Statute designated as N.J.S.A. 2A:31-1 through 6, and Plaintiffs brings this action pursuant to the provisions thereof for the benefit of the next of kin of Decedent.

**WHEREFORE,** Plaintiffs demand judgment against Defendants jointly, severally, and/or in the alternative, for such damages, both compensatory and punitive, as may be permitted pursuant to the laws of the State of New Jersey, together with pre- and post-judgment interest thereon, costs of suit and attorney fees.

Plaintiffs hereby incorporate by reference all allegations set forth in the Standard Complaint, as amended, previously served upon all parties and filed with Middlesex County Clerk. Additional copies of the Standard Complaint are available upon written request to Plaintiffs' counsel and a pdf version can be downloaded from the judiciary's website: https://www.njcourts.gov.attorneys/mcl/middlesex/asbestos.html.

In addition, copies of the Mass Tort Asbestos Manual, General Orders and Standing Orders pertaining to Middlesex County asbestos litigation are available from the judiciary's website, or from Special Master Agatha N. Dzikiewicz, Esq., Middlesex County Courthouse, 56 Paterson

Street, Chambers 204, New Brunswick, New Jersey 08903, Tel: 732-645-4300 ext. 88211, e-mail – Agatha.Dzikiewicz@njcourts.gov.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues.

**DEMAND FOR ANSWERS TO INTERROGATORIES**

Plaintiffs demand answers to the Standard Interrogatories pursuant to the Asbestos General Order. Said Standard Interrogatory forms may be obtained online at www.njcourtsonline.com.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Erin M. Boyle, Esq. and Joseph J. Mandia, Esq. are hereby designated as trial counsel in this matter.

**CERTIFICATION PURSUANT TO RULE 4:5-1**

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action currently pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I have no knowledge at the time of any non-party who should be joined in the action.

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
Attorneys for Plaintiff

By ______________________________
Joseph J. Mandia, Esquire
ID#: 016652008
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856) 755-1115

Dated: July 23, 2025